IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


JOHN KIMMEL AND CODY KIMMEL,          CV 04-369-BR

        Plaintiffs,               OPINION AND ORDER

v.

FRANZ SCHOENING, MATTHEW
MANUS, and CITY OF PORTLAND,

        Defendants.


**TOM STEENSON**
Steenson, Schumann, Tewksbury, Creighton & Rose, P.C.
500 Yamhill Plaza Building
815 S.W. Second Avenue
Portland, OR  97204
(503) 221-1792

        Attorneys for Plaintiffs

**LINDA MENG**
City Attorney
**WILLIAM W. MANLOVE**
Deputy City Attorney
1221 S.W. Fifth Avenue, Room 430
Portland, OR  97204
(503) 823-4047

        Attorneys for Defendants

1 - OPINION AND ORDER

**BROWN, Judge.**

Plaintiffs bring this action pursuant to 42 U.S.C. § 1983 alleging Defendants violated Plaintiffs' rights under the Fourth Amendment to the United States Constitution in the course of a police contact on June 1, 2003.  Plaintiffs allege Defendants lacked reasonable suspicion or probable cause to conduct either a *Terry* stop or to arrest them and, in any event, used excessive force in doing so.  Plaintiffs also allege state law claims for false imprisonment and negligence, and Cody Kimmel alleges battery.

This matter comes before the Court on Defendants' Motion for Partial Summary Judgment (#44) as to Plaintiffs' § 1983 claims and Plaintiff's state law claim of false imprisonment to the extent these claims are based on an alleged absence of reasonable suspicion or probable cause for Defendants to conduct a *Terry* stop or to arrest Plaintiffs.  Also before the Court is Plaintiffs' Motion to Strike Evidence and Portions of the Concise Statement of Material Facts Offered by Defendants in Support of Defendants' Motion for Partial Summary Judgment Motion(#64).

On April 1, 2005, the Court heard oral argument and took the Motions under advisement.  For the reasons that follow, the Court **GRANTS in part** and **DENIES in part** Defendants' Motion for Partial Summary Judgment and **DENIES** Plaintiffs' Motion to Strike.

## FACTS

The following facts are undisputed except as noted.

On June 1, 2003, at approximately 3:52 a.m., the City of Portland's Bureau of Emergency Communications (BOEC) received a cell phone call from a citizen, Jeremy Brock, who reported "some suspicious guys" on the street near a vehicle. In response to the dispatcher's question whether he thought the men were stealing the vehicle, Brock responded, "Yeah, it looks like, well, I'm, I'm just guessing. They just look like, like two shady individuals. I don't know. It'd suck if somebody got their truck stolen." Manlove Aff., Ex. 6 at 2. When asked whether the individuals had tools, Brock responded, "[O]ne of the guys looked like he was fiddling around in the drivers seat and they're peeling out right now. They're taking off." Brock maintained his telephone connection with the dispatcher, followed the individuals in his car, and reported their license plate and the make, model, and color of the vehicle to the dispatcher.

At 3:52 a.m., a BOEC dispatcher contacted Defendant Franz Schoening, a Portland police officer on duty, and relayed Brock's report that he believed "two guys are breaking into a [car] here." The dispatcher also gave Officer Schoening the location of the vehicle. Defendant Matthew Manus, also a Portland police officer on duty, heard the dispatch to Officer Shoening. Officers Manus and Schoening each responded to the call

separately.

At 3:55 a.m., BOEC broadcasted the license number, make, model, and color of the vehicle and the direction it was headed. While Officers Schoening and Manus traveled towards the described vehicle, they passed Brock's car. Brock looked at the officers and pointed to the vehicle he believed was being stolen.

At 3:56 a.m., Officer Manus advised BOEC he was stopping that car. Officer Manus activated his overhead lights, but he did not turn on his siren. The car pulled over without incident on the I-5 freeway on-ramp to the Marquam Bridge northbound off Macadam Avenue. Officer Manus parked 20 feet behind the car, and Officer Schoening parked his patrol car behind and to the right of Officer Manus's vehicle. Officer Manus approached the driver's side of the vehicle, and Officer Schoening approached the passenger side. Both officers had their weapons drawn.

As Officer Manus approached, Cody Kimmel, the driver, reached to his right to the console between the driver's seat and the passenger's seat in order to pick up his registration and insurance papers. This movement, in turn, resulted in the officers losing sight of Cody Kimmel's hands. In response, Officer Manus ordered Cody Kimmel to keep his hands in view on the steering wheel.

According to Plaintiffs, when Officer Manus reached the vehicle, he pointed his handgun approximately one foot from Cody

Kimmel's head, and he continued to do so for about three minutes with his finger on the trigger of his gun. Plaintiffs also allege Officer Schoening held his handgun approximately one to two feet from John Kimmel's head. Defendants deny both of these allegations.

Officers Manus and Schoening removed Plaintiffs from the vehicle and handcuffed them. According to Plaintiffs, Officer Manus "slammed" Cody Kimmel against the truck when he removed Cody Kimmel from the vehicle and Officer Shoening ignored John Kimmel's complaints of pain and shoulder spasms arising from a pre-existing shoulder injury and the handcuffing.

The BOEC CAD printout reflects Cody Kimmel was "in custody" at 3:57 a.m. and John Kimmel was "in custody" at 3:58 a.m. Officer Manus placed Cody Kimmel in his patrol car, and Officer Schoening placed John Kimmel in his patrol car.

At 4:00 a.m., Officer Manus used the Mobile Data Terminal (MDT) computer in his patrol car to determine ownership of the vehicle. Officer Manus queried the MDT about Nancy Kimmel, the registered owner of the vehicle; her address; and a policy number with Farmer's Insurance Company. At 4:02 a.m., Officer Schoening radioed the BOEC dispatcher and asked her to contact Brock to determine why he believed the vehicle was being stolen. At 4:08 a.m., the dispatcher radioed back to Officer Schoening with information from Brock.

After determining Plaintiffs had lawful possession of the car and, therefore, were not stealing it, Officer Manus removed Cody Kimmel from the patrol car, unhandcuffed him, and returned his insurance papers, registration, and driver's license. Officer Schoening likewise removed John Kimmel from the patrol car and took off his handcuffs. Officer Manus then cleared the call at 4:11 a.m. According to Cody Kimmel, the entire interaction with the police took between 20 and 25 minutes. The BOEC CAD, however, shows Officer Manus pulled the car over at 3:56 a.m. and cleared the call at 4:11 a.m, a total of 14 minutes.

## PLAINTIFFS' MOTION TO STRIKE

Plaintiffs move to strike a number of the statements of fact offered by Defendants in support of their Motion for Partial Summary Judgment.

### A.    Facts 1-3

Plaintiffs move to strike the phrases characterizing the evidence as "a crime in progress," "breaking into a truck," "when asked if he had any tools etc.," and "high rate of speed." Plaintiffs allege these statements mischaracterize the evidence.

After a review of the transcript of Brock's call and the communication of that information to Defendants, the Court concludes these statements fairly characterize the evidence.

**B.    Facts 1-4, 6-10, and 24**

Plaintiffs object to these facts as hearsay information given by Brock to 911 and, in turn, conveyed to the officers. Defendants argue this information goes to the state of mind of the officers rather than to establish the truth of the matter asserted, and, therefore, the information is not hearsay. Defendants also argue the report by Brock contains both excited utterances and present sense impressions, and, therefore, Brock's report is admissible.

The Court concludes these statements of fact show the state of mind of the officers when they stopped Plaintiffs' vehicle and are not offered to establish the truth of the matter asserted. Thus, these statements of fact are not hearsay under Fed. R. Evid. 801(c).  In addition, the Court concludes these statements of fact fall within the exceptions to the hearsay rule for present sense impressions and excited utterances.  Fed. R. Evid. 803(1) and (2).

**C.    Fact 28**

Plaintiffs object to Defendants' asserted statement of fact that "Cody Kimmel guesses he was in handcuffs for 5 minutes." Plaintiffs contend inclusion of this statement of fact does not satisfy the requirement of Fed. R. Evid. 701, which requires lay opinions to have a rational basis.

Defendants, however, argue Cody Kimmel's offer of an

estimate regarding matters such as time, distance, and speed is not prohibited by the rational basis requirement of Fed. R. Evid. 701.

A rational basis for a lay opinion is an opinion a normal person would form on the basis of observed facts. *See Lubbock Feed Lots, Inc. v. Iowa Beef Processors, Inc.*, 630 F.2d 250, 263 (5th Cir. 1980). The record shows Cody Kimmel had personal knowledge of his handcuffing experience, and, therefore, a rational basis for forming an opinion as to the duration of being handcuffed. The Court, therefore, concludes this statement of fact satisfies the requirements of Fed. R. Evid. 701. In any event, the statement is in the nature of an admission and, therefore, is admissible.

For these reasons, the Court denies Plaintiffs' Motion to Strike.

## **DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

### **Standards**

Fed. R. Civ. P. 56(c) authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law. The moving party must show the absence of an issue of material fact. *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002). In response to a properly supported motion for summary judgment, the

nonmoving party must go beyond the pleadings and show there is a genuine issue of material fact for trial. *Id.*

An issue of fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarmo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court must draw all reasonable inferences in favor of the nonmoving party. *Id.* A mere disagreement about a material issue of fact, however, does not preclude summary judgment. *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1389 (9th Cir. 1990). When the nonmoving party's claims are factually implausible, that party must come forward with more persuasive evidence than otherwise would be required. *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1147 (9th Cir. 1998) (citation omitted).

The substantive law governing a claim or a defense determines whether a fact is material. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000). If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment. *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001).

## **Discussion**

In their § 1983 claim, Plaintiffs allege: (1) the officers

did not have reasonable suspicion to stop Plaintiff's vehicle;

(2) if the officers had reasonable suspicion for the stop, the

stop itself was unreasonable in its intrusiveness and duration

and thus, ultimately constituted an arrest; (3) the officers

arrested Plaintiffs without probable cause; and (4) the officers

are not entitled to qualified immunity on these issues.

Plaintiffs also allege the officers falsely imprisoned Plaintiffs

in violation of state law.

In their Motion, Defendants seek summary judgment on

Plaintiffs' § 1983 and false imprisonment claims on the grounds

that the undisputed facts show the officers lawfully detained

Plaintiffs for the purpose of investigating a reported crime.

Alternatively, Defendants also argue the officers are entitled to

qualified immunity on Plaintiffs' § 1983 claim because a

reasonable officer in their position could have believed his

actions did not violate Plaintiffs' constitutional rights.

**I.   <u>Plaintiffs' § 1983 Claim</u>**

As noted, Plaintiffs bring this action under § 1983 and

allege Defendants violated Plaintiffs' Fourth Amendment rights.

The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their
> persons, houses, papers, and effects against
> unreasonable searches and seizures shall not be
> violated, and no Warrants shall issue, but upon
> probable cause, supported by Oath or affirmation,
> and particularly describing the place to be
> searched, and the person or things to be seized.

U.S. CONST. amend. IV, § 1.

A. **There Was Reasonable Suspicion to Stop Plaintiffs' Vehicle.**

In *Terry v. Ohio*, 392 U.S. 1 (1968), the Supreme Court held that stopping and frisking a person constitutes a seizure governed by the Fourth Amendment's protection from unreasonable search and seizure. *Id.* at 9.

In *Morgan v. Woessner*, the Ninth Circuit explained:

> Stops under the Fourth Amendment fall into three categories. First, police may stop a citizen for questioning at any time, so long as that citizen recognizes that he or she is free to leave. Such brief, "consensual" exchanges need not be supported by any suspicion that the citizen is engaged in wrongdoing, and such stops are not considered seizures. Second, the police may "seize" citizens for brief, investigatory stops. This class of stops is not consensual, and such stops must be supported by "reasonable suspicion." Finally, police stops may be full-scale arrests. These stops, of course, are seizures, and must be supported by probable cause.

997 F.2d 1244, 1252 (9th Cir. 1993)(citations omitted).

A police officer may conduct a brief stop for investigatory purposes when the officer has only "reasonable suspicion" to believe the stopped individual has committed wrongdoing. *See Terry v. Ohio*, 392 U.S. 1, 23-27 (1968). *See also Allen v. City of Portland*, 73 F.3d 232, 235 (9th Cir. 1996). "Reasonable suspicion is formed by 'specific, articulable facts which, together with objective and reasonable inferences, form the basis for suspecting that the particular person detained is engaged in

criminal activity.'" *United States v. Dorais*, 241 F.3d 1124, 1130 (9th Cir. 2001)(quoting *United States v. Michael R.*, 90 F.3d 340, 346 (9th Cir. 1996)). It requires only "a minimal level of objective justification." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000). A court must consider the totality of the circumstances when determining whether reasonable suspicion existed. *United States v. Osborn,* 203 F.3d 1176, 1181 (9th Cir. 2000).

Here it is undisputed the citizen informant gave his name and telephone number and reported suspicious activity that he believed constituted a car theft in progress. Brock followed the vehicle and pointed it out to Officers Manus and Schoening as the vehicle headed for the freeway. The totality of these circumstances, the time of night, and the exigent nature of the alleged crime in progress, all provided the officers with the "minimal level of justification" required for reasonable suspicion to perform a *Terry* stop of Plaintiffs' vehicle. *See, e.g., United States v. Garrett,* 959 F.2d 1005, 1007 (D.C. Cir. 1992)(reasonable suspicion existed to justify a *Terry* stop of a car with the same color and license plates as that reported in a citizen complaint in a high-crime area).

The Court, therefore, concludes Defendants are entitled to partial summary judgment that there was reasonable suspicion to support the stop of Plaintiffs.

**B.  There Are Fact Issues as to Whether This *Terry* Stop Was Converted into an Arrest.**

Even if justified by reasonable suspicion, Plaintiffs argue, nonetheless, that the officers' actions and the length of the detention transformed this *Terry* stop into an arrest that required probable cause.  In particular, Plaintiffs contend the officers were unreasonable when they allegedly pointed their firearms at Plaintiffs at close range for an extended period of time, aggressively removed Plaintiffs from their vehicle, frisked or patted down Plaintiffs, and handcuffed Plaintiffs without regard to John Kimmel's complaints of pain.

The Ninth Circuit has noted "[t]here is no bright-line rule to determine when an investigatory stop becomes an arrest." *Washington v. Lambert*, 98 F.3d 1181, 1185 (9th Cir. 1996).

> Rather, in determining whether stops have turned into arrests, courts consider the "totality of the circumstances."  As might be expected, the ultimate decision in such cases is fact-specific.
>
> In looking at the totality of the circumstances, we consider both the intrusiveness of the stop, i.e., the aggressiveness of the police methods and how much the plaintiff's liberty was restricted and the justification for the use of such tactics, i.e., whether the officer had sufficient basis to fear for his safety to warrant the intrusiveness of the action taken.  In short, we decide whether the police action constitutes a *Terry* stop or an arrest by evaluating not only how intrusive the stop was, but also whether the methods used were reasonable *given the specific circumstances*.  As a result, we have held that while certain police actions constitute an arrest in certain circumstances, e.g., where the "suspects" are cooperative, those *same* actions may

> *not* constitute an arrest where the suspect is
> uncooperative or the police have specific reasons
> to believe that a serious threat to the safety of
> the officers exists. "The relevant inquiry is
> always one of reasonableness under the
> circumstances."

*Id.* (citations omitted; emphasis in original). *See also*

*Halvorsen v. Baird*, 146 F.3d 680, 684 (9th Cir. 1998).

To determine whether a detention constituted an arrest or

merely an investigatory stop, the court may consider whether a

reasonable person would have felt free to leave after brief

questioning. *Allen*, 73 F.3d at 235. Certain circumstances may

justify restraint or lengthy detention of a person for whom there

is no probable cause to arrest. Such action may be appropriate

when the police diligently pursue an investigation that is likely

to confirm or to dispel their suspicions of the individual

quickly. *Halvorsen*, 146 F.3d at 684. Police officers also may

use intrusive means of effecting a stop when the suspect is

uncooperative, the stop closely follows a violent crime, or the

officers have information that the suspect is armed. *See*

*Washington*, 98 F.3d at 1189. Consequently, a stop is not

automatically converted into an arrest when officers point their

weapons at a suspect, use handcuffs, and place the suspect in a

police car for questioning. *Allen*, 66 F.3d at 1056. The

relevant inquiry is one of reasonableness under all of the

circumstances. *Id.* at 1057.

As noted, although a stop is not automatically converted to

14 - OPINION AND ORDER

an arrest by the use of weapons, handcuffs, or placement in a police car, at some point the degree of force, proximity, and duration of these events can convert a stop into an arrest under the totality of the circumstances. *Compare Gallegos v. City of Los Angeles*, 308 F.3d 987, 992 (9th Cir. 2002)(*Terry* stop not converted to arrest despite officers ordering plaintiff from car at gunpoint; handcuffing, frisking, and placing plaintiff in patrol car for 45 minutes while officers investigated; and, at the same time, plaintiff was fully compliant and the officers were not convinced a particularized danger existed) to *Washington v. Lambert*, 98 F.3d 1181, 1187 (9th Cir. 1996)(*Terry* stop converted to arrest when police ordered plaintiffs from car at gunpoint; frisked, handcuffed, and placed plaintiffs in patrol cars while officers investigated allegations; and, at the same time, plaintiffs were compliant and the officers had merely a generalized concern that plaintiffs might be armed). *See also United States v. Del Vizo*, 918 F.3d 821, 825 (9th Cir. 1990)(there was a "lack of investigatory justification for" handcuffing and making plaintiff lie on the ground even though he was suspected of drug trafficking because plaintiff complied with officers and there was no other evidence suggesting plaintiff was "particularly dangerous.").

Plaintiffs here contend the only possible lawful purpose for the stop was to investigate whether the vehicle was stolen, and

the least intrusive means of doing so was to compare the identifications of the occupants to the name of the registered owner.  According to Plaintiffs, the officers merely should have taken Plaintiffs' licenses, insurance information, and the vehicle registration and investigated without removing Plaintiffs from the vehicle at gunpoint and frisking, handcuffing, and placing Plaintiffs in patrol cars.

The Ninth Circuit, however, has made clear that "[p]olice officers . . . 'need not avail themselves of the least intrusive means of responding to an exigent situation.'"  *Allen v. City of Los Angeles*, 66 F.3d 1052, 1057 (9th Cir. 1995)(quoting *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994)).  "The Fourth Amendment does not mandate one and only one way for police to confirm the identity of a suspect.  It requires only that the government and its agents act *reasonably*."  *Gallegos v. City of Los Angeles*, 308 F.3d 987, 992 (9th Cir. 2002)(emphasis in original).

"Police officers are entitled to employ reasonable methods to protect themselves and others in potentially dangerous situations."  *Allen*, 66 F.3d at 1056.  Furthermore, police officers can and should take reasonable steps to limit the dangerousness associated with police actions.  These steps may

include pointing their weapons, use of handcuffs, and moving suspects to patrol cars. *See Haynie v. County of Los Angeles*, 339 F.3d 1071, 1076-77 (9th Cir. 2003). *See also Gallegos v. City of Los Angeles*, 308 F.3d 987, 991 (9th Cir. 2002).

In their affidavits, Officers Manus and Schoening provided undisputed testimony as to their training related to the risk of violence and injury arising from traffic stops of stolen vehicles. As these events began to unfold, the officers could not know what to expect when they reached Plaintiffs' vehicle. BOEC informed the officers that the vehicle was suspected stolen, it was the middle of the night, and the stop occurred on a freeway on-ramp. Before Officer Manus reached the vehicle, Cody Kimmel moved his hands out of the officers' sight. In this situation, a jury could find it was reasonable for Officers Manus and Schoening to attempt to control or to minimize potential risk to themselves by removing Plaintiffs from the car. Because the officers also intended to leave Plaintiffs alone in the patrol cars for at least a short time while they investigated, a jury could also find it was reasonable for Officers Manus and Schoening to frisk Plaintiffs before placing them in the police cars.

Plaintiffs, however, also allege the officers aggressively used their guns by pointing them at Plaintiffs' heads no more than one foot away for several minutes, failed to respond to John

Kimmel's complaints of excruciating pain from the handcuffs, and aggressively handled Cody Kimmel. Although neither handcuffing nor the use of guns is *de facto* unreasonable during a *Terry* stop, Plaintiffs obviously assert more than the mere pointing of guns or handcuffing. *See United States v. Bautista*, 684 F.2d 1286, 1289 (9th Cir. 1982)(handcuffing during *Terry* stop not *de facto* unreasonable). *See also United States v. Alvarez*, 899 F.2d 833, 838-39 (9th Cir. 1990)(*Terry* stop not converted to arrest when officers approached vehicle with guns drawn and ordered defendant to step out of the car).

As noted, at some point the proximity and duration of pointing a gun and the continued use of handcuffs can become unreasonable. *See Robinson v. Solano County*, 278 F.3d 1007 (9th Cir. 2002)(pointing a gun at suspect's head constituted unreasonable force when no exigent circumstances existed and defendant was obviously not armed). All rough handling, however, is not unreasonable. *See Jackson v. City of Bremerton*, 268 F.3d 646, 651-53 (9th Cir. 2001)(rough handling under the exigent circumstances present was not excessive force).

On this record, the Court concludes the officers' use of guns and handcuffs raises disputed issues of fact regarding the degree of force used by the officers and, thus, its

reasonableness under the Fourth Amendment.[1]  The Court,

therefore, cannot determine at this stage whether the conduct of

the officers in this case converted this *Terry* stop to an arrest.

Accordingly, the Court concludes Defendants are not entitled to

summary judgment on this issue.

In addition, because the Court is unable to determine on

this record whether the stop constituted an arrest or a mere

detention incident to a stop under the Fourth Amendment, the

Court need not determine at this stage whether the officers had

probable cause to arrest Plaintiffs.

### C.   Defendants Are Not Entitled to Qualified Immunity on This Record.

Even if the officers violated Plaintiffs' Fourth Amendment

rights, Defendants, nonetheless, contend the officers' actions

are protected under qualified immunity.

To determine whether the officers have qualified immunity,

the Court must engage in an analysis of the reasonableness of the

officers' behavior, which differs from the analysis of

reasonableness under the Fourth Amendment.  *See Robinson v.*

*Solano County*, 278 F.3d 1007, 1012 (9th Cir. 2002)("The standard

---

[1] Defendants state in their Motion that the issue of
excessive force is to be decided at trial.  Despite a lengthy
discussion with counsel at oral argument, this issue remains
extremely difficult to segregate from the other issues raised in
this case because whether the officers' behavior during the stop
was unreasonable and whether the degree of force used by the
officers converted the stop into an arrest depend on the same
facts as the excessive force claim.

of reasonableness for the purposes of qualified immunity is distinct from the standard of reasonableness embodied in the Fourth Amendment.").

"Generally officers performing discretionary duties have qualified immunity, which shields them 'from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.'" *Haynie v. County of Los Angeles*, 339 F.3d 1071, 1077 (9th Cir. 2003)(quoting *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)). "Qualified immunity shields an officer from suit when [he] makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances [he] confronted." *Brosseau v. Haugen*, 125 S.Ct. 596, 599 (2004) (citing *Saucier v. Katz*, 533 U.S. 194, 206 (2001)).

When analyzing a claim of qualified immunity, a court first must determine whether the facts, taken in the light most favorable to the party asserting the injury, show the officer's conduct violated a constitutional right. *Brosseau*, 125 S. Ct. at 598 (citing *Saucier*, 533 U.S. at 201). If the court concludes the conduct violated a constitutional right, the court then must determine whether, under the law existing at the time of the conduct, a reasonable officer could have believed his conduct was lawful. *Act Up!/Portland v. Bagley*, 988 F.2d 868, 871 (9th Cir. 1993). *See also Brosseau*, 125 S. Ct. at 599.

With respect to step one of the analysis, "'[t]he contours of the [constitutional] right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Brosseau*, 125 S. Ct. at 599 (quoting *Saucier*, 533 U.S. at 201). "Because the focus is on whether the officer had fair notice that [his] conduct was unlawful, . . . [i]f the law at [the time of the conduct] did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability." *Id*.

The Court already has concluded as a matter of law that the officers had reasonable suspicion to stop Plaintiffs and that the officers' conduct in initially detaining Plaintiffs was constitutional. There is, therefore, no further need to evaluate qualified immunity on this issue.

As to whether the Defendants' conduct converted this *Terry* stop into an arrest, the facts on this issue are disputed, and the law is unclear. As noted, the plaintiff in *Gallegos* contended the officers' conduct converted a *Terry* stop into an arrest. In *Gallegos*, the plaintiff was fully compliant with the officers' demands during the stop, and there was no allegation of violent crime. The Ninth Circuit, nonetheless, held the *Terry* stop was not converted into an arrest even though the officers removed plaintiff from his vehicle at gunpoint and frisked him,

handcuffed him, and placed him in a patrol car for 45 minutes. 308 F.3d at 993.

On the other hand, the Ninth Circuit in *Del Vizo* held the *Terry* stop was converted into an arrest when officers ordered a suspected drug trafficker out of his vehicle, had him lie on the ground, and handcuffed him. 918 F.2d at 825. The court based its conclusion that the stop was converted into an arrest on the fact that the defendant complied fully with all orders, and there was "no other evidence suggesting that Del Vizo was particularly dangerous." *Id*.

Similarly, the Ninth Circuit in *Washington* held a *Terry* stop was converted into an arrest when police ordered the plaintiffs from their car at gunpoint and frisked, handcuffed, and placed the plaintiffs in patrol cars while officers investigated. *Washington*, 98 F.3d at 1192. The court again based its conclusion that the stop was converted into an arrest on the fact that plaintiffs were compliant, and the officers had a merely generalized worry that the plaintiffs might be armed. *Id*. at 1190-91.

Considering these cases as a whole, as well as Plaintiffs' assertions concerning the proximity and degree of the use of guns, the degree of force used in removing Cody Kimmel from the vehicle, and the use of handcuffs on John Kimmel despite his alleged complaint of excruciating pain, this record does not

support a finding that a reasonable officer could have believed such alleged conduct was lawful.  Defendants, therefore, are not entitled to qualified immunity on this basis.  In addition, because the Court is unable to determine on this record whether the officers are entitled to qualified immunity on the question whether the stop was converted into an arrest, the Court need not decide whether Defendants are entitled to qualified immunity with respect to probable cause.

For all of these reasons, the Court concludes Defendants are not entitled to summary judgment on the basis of qualified immunity.

## II.   **There Are Fact Issues that Preclude Summary Judgment on Plaintiffs' State Law Claim for False Imprisonment.**

Plaintiffs allege Officers Shoening and Manus committed the tort of false imprisonment by confining Plaintiffs unlawfully. Plaintiffs argue their confinement was illegal under Oregon law because it was, in effect, an arrest without probable cause.  On the other hand, Defendants contend Plaintiffs' confinement was lawful, and, therefore, Defendants are entitled to summary judgment on this claim.

To prevail on a claim of false imprisonment under Oregon law, a plaintiff must show:  (1) defendant confined the plaintiff; (2) defendant intended the act that causes confinement; (3) plaintiff was aware of the confinement; and (4) the confinement was unlawful.  *Hiber v. Creditors Collection*

23 - OPINION AND ORDER

*Serv.*, 154 Or. App. 408, 413, 961 P.2d 898, 901 (1998)(citation omitted).  Only the fourth element is at issue in this case.

The Oregon Supreme Court has made clear that Article I, § 9, of the Oregon Constitution, which prohibits unreasonable search and seizure, is to be interpreted independently of the Fourth Amendment to the United States Constitution.  *State v. Caraher*, 293 Or 741, 757 (1982).  *See also State v. Kennedy*, 295 Or. 260, 267 (1983) ("Lest there be any doubt about it, when this court cites federal opinions in interpreting a provision of Oregon law, it does so because it finds the views there expressed persuasive, not because it considers itself bound to do so by its understanding of federal doctrines.").

Accordingly, this Court first must determine whether the detention in this case was lawful under Oregon law, including the interpretation by Oregon courts of the protections under Article I, § 9, of the Oregon Constitution.  As noted, this analysis is separate and distinct from the Court's analysis of Plaintiffs' detention under the Fourth Amendment of the United States Constitution.  For the reasons that follow, the Court concludes there is a question of fact as to whether  Plaintiffs were arrested within the meaning of Or. Rev. Stat. § 133.005(1).

Or. Rev. Stat. § 133.005(1) provides an "arrest" is "to place a person under actual or constructive restraint or to take a person into custody for the purpose of charging that person

with an offense.  A 'stop' as authorized under ORS 131.605 to
131.625[2] is not an arrest."  "[E]ven when a stop is authorized, a
restraint that goes beyond the scope of a stop will result in an
illegal arrest, if it is not based on probable cause." *State v.
Morgan*, 106 Or. App. 138, 141, 806 P.2d 713 (1991)(citation
omitted).

In *Morgan*, police received a tip from an identified
informant that "there was possibly a person taking a person from
a car or putting a person into a car at gunpoint." *Morgan*, 106
Or. App. at 140.  The informant described the car and its
occupants.  *Id*.  Several minutes later, police stopped the
described car and, with guns drawn, directed the occupants out of
the car and frisked, handcuffed, and placed them in separate
patrol cars.  *Id*.  The defendant was polite and cooperative, and
the frisk did not reveal any guns, bullets, or associated
paraphernalia.  *Id*. at 140.  When asked, however, the defendant
told police that he had a gun in the car and informed them of its
location.  *Id*.  The defendant was charged with being a felon in
possession of a weapon in violation of Or. Rev. Stat. § 166.270.
*Id.* at 141.  The defendant moved to suppress his statements and
the evidence obtained as a result of his statements on the ground
that he was arrested without probable cause.  *Id*.

_____

[2] The Court notes Or. Rev. Stat. §§ 131.605-131.625 describe
stops based on reasonable suspicion rather than arrests.

The Oregon Court of Appeals held the police initially had reasonable suspicion to stop the vehicle, which entitled them to take reasonable precautions for their safety, by removing the defendant from the vehicle and conducting a frisk. *Id*. at 142. After the "defendant was taken out of the car and frisked, [however,] any concern about immediate danger dissipated." *Id*. The court, therefore, found "when defendant was handcuffed and placed in the patrol car, he was arrested within the meaning of ORS 133.005(1)." *Id*.

The facts of *Morgan*, though similar to this case, are also distinguishable. As in *Morgan*, the Defendant officers here received a tip that provided them with reasonable suspicion to stop Plaintiffs' vehicle. As in *Morgan*, Plaintiffs were fully cooperative, and the frisk of Plaintiffs did not reveal any weapons or evidence of weapons. Although any officer concerns about immediate danger from Plaintiffs themselves dissipated after the frisk, the officers were still investigating the possibility that Plaintiffs were using a stolen car. A rational juror, therefore, could conclude the officers acted reasonably under Oregon law by detaining Plaintiffs in the police cars while that investigation continued. On the other hand, viewed in the light most favorable to Plaintiffs, a jury could conclude Defendants "arrested" Plaintiffs under Oregon law. Accordingly, there is a question of material fact as to whether Plaintiffs

were arrested within the meaning of Or. Rev. Stat. § 133.005(1) when the officers handcuffed them and placed them in patrol cars.

Because there is a question of material fact as to whether Plaintiffs were arrested within the meaning of Or. Rev. Stat. § 133.005(1), the Court need not address whether, in the event Defendants arrested Plaintiffs, they did so with probable cause, and therefore, whether Plaintiffs' detention was unlawful under Oregon law.

Thus, the Court concludes Defendants are not entitled to summary judgment on Plaintiffs' false imprisonment claim.

## CONCLUSION

For these reasons, the Court **GRANTS in part** and **DENIES in part** Defendants' Motion for Partial Summary Judgment (#44) and **DENIES** Plaintiffs' Motion to Strike (#64).

IT IS SO ORDERED.

DATED this 19th day of April, 2005.

/s/ Anna J. Brown
_____
ANNA J. BROWN
United States District Judge

Kimmel cv 04-369 o&o.4-18-05.wpd